IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ASHTON SHAFFER, <br><br> Plaintiff, <br><br> vs. <br><br> HALSTED FINANCIAL SERVICES, LLC, *et al.*, <br><br> Defendants. | CASE NO. 3:21-CV-1849 <br><br> JUDGE JACK ZOUHARY <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> REPORT AND RECOMMENDATION |

INTRODUCTION

On August 30, 2021, Plaintiff Ashton Shaffer filed suit against Defendants Halsted Financial Services, LLC, Brian S. Glass, Esq., and Resurgent Capital Services in the Court of Common Pleas, Paulding County, Ohio. (ECF #1-1 at PageID 3). Mr. Shaffer alleged a class action consisting of all persons who

> (a) received collection letters from Defendant Halsted indicating it and Resurgent Capital Services Financial Services are the legal assignees of alleged credit card accounts, which is false (b) and whose personal information was communicated from Defendant Resurgent Capital Services, Inc. (Resurgent) to Defendant Halsted Financial Services, (Halsted) without the Plaintiffs' express or implied permission and in violation of the Fair Debt Collection Services [*sic*] Act (FDCPA) . . . .

(*Id.* at PageID 4). The Complaint purports to assert causes of action under federal and Ohio civil RICO law (*id.* at PageID 6-9) and under the Ohio Consumer Sales Practices Act (*id.* at PageID 9-10).

Defendants jointly removed the matter to this Court on September 29, 2021, alleging federal question jurisdiction under 28 U.S.C. § 1331. (ECF #1 at PageID 1). They then filed an

1

Answer on October 4, 2021. (ECF #4). Defendants' first affirmative defense in their Answer averred: "Plaintiff's claims [are] subject to an Arbitration Clause and must be arbitrated subject to this Clause." (*Id.* at PageID 34).

On October 15, 2021, Judge Jack Zouhary referred this matter to me for general pretrial supervision. (ECF #6).

Defendants filed a Motion to Compel Arbitration and to Stay Case Pending Arbitration on December 3, 2021. (ECF #10). The motion alleged that Mr. Shaffer's account originated with Credit One Bank, NA, and that when Mr. Shaffer first applied for the account, he consented to a broad arbitration clause that provides in pertinent part as follows:

> **Arbitration Agreement**
>
> PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS
>
> This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.
>
> If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY— CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.
>
> **Agreement to Arbitrate:** You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This agreement to arbitrate is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada.
> For purposes of this agreement to arbitrate, "you" includes you, any co-applicant, any Authorized User (including Additional Cardholders), or anyone else connected with you or claiming through you; and "we" or "us" includes Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue.
>
> **Covered Claims:** Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges, or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your Account is closed, you pay us in full any outstanding debt you owe, or you file for bankruptcy. Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this agreement to arbitrate in the broadest way the law will allow it to be enforced.
>
> \* \* \*
>
> **Other Parties Subject to this Agreement to Arbitrate:** In addition to you and us, the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim subject to this arbitration provision; all joint account holders, Additional Cardholders, and Authorized Users of your Account(s).

2

(ECF #10-1 at PageID 84-85). The Motion was supported by a declaration from Patricia Sexton. (ECF #10-1 at PageID 68-70).

On December 12, 2021, Mr. Shaffer filed a Memorandum Opposing Motion to Compel Arbitration and Motion to Depose Patricia Sexton. (ECF #11). Defendants filed a Reply in Support of Motion to Compel Arbitration on December 20, 2021 (ECF #12), which was supported by a slightly revised declaration from Ms. Sexton (ECF #12-1 at PageID 101-03).

LAW AND ANALYSIS

Mr. Shaffer opposes Defendants' request for arbitration on the basis that the declaration from Ms. Sexton accompanying the initial Motion to Compel Arbitration was defective because it was undated and "critical language is missing . . . ." (ECF #11 at PageID 91). Further, Mr. Shaffer argues that the declaration contains "inadmissible hearsay statements from different representatives that fail to prove Shaffer's alleged credit card debt was assigned to these various assignees." (*Id.*). Mr. Shaffer also argues that "no actual documents indicating Shaffer's disputed debt was ever provided to the Court or the undersigned." (*Id.*). For the reasons that follow, I find these arguments are unavailing and thus this matter should be resolved in arbitration.

I. **Mr. Shaffer's challenges to the form of Ms. Sexton's initial declaration are moot or otherwise without merit.**

Initially, Mr. Shaffer takes issue with the fact that Ms. Sexton's declaration is undated and missing what he characterizes as "critical language" found in 28 U.S.C. § 1746. (ECF #11 at PageID 91). As noted above, Defendants' reply brief was accompanied by a revised declaration from Ms. Sexton that added a date and specified the location where she signed it. (ECF #12-1 at PageID 103). There were no other substantive changes to the text of the declaration. (*Compare* ECF #10-1 at PageID 68-70 *with* ECF #12-1 at PageID 101-03).

3

Federal law permits the submission of an unsworn declaration in lieu of an affidavit, subject to certain requirements. *See* 28 U.S.C. § 1746. In pertinent part, § 1746 provides as follows:

> Wherever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, *in substantially the following form*:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

*Id.* (emphasis added). Notably, the statute indicates the declaration need only be in "substantially" the form specified. *Id.*

Ms. Sexton's original declaration was undated. (*See* ECF #10-1 at PageID 70). Further, it did not specifically indicate whether it was executed within or without the United States (*id.*); however, immediately above Ms. Sexton's signature was the statement: "I declare under penalty of perjury that the foregoing is true and correct." Except for omitting "Executed on (date)," such language precisely tracks § 1746(2), which reasonably suggests the declaration was signed within the United States. (If so, then the declaration is not missing the "critical language" cited by Mr. Shaffer, because that language – "under the laws of the United States of America," *see* § 1746(1) – applies only to declarations signed outside the United States).

4

In fact, the revised declaration accompanying Defendants' reply brief contains a handwritten interlineation confirming that the declaration was signed within the United States:

> Printed Name: Patricia Sexton
> Signed on December 3, 2021 in Greenville, SC

(ECF #12-1 at PageID 103). It also provides the date on which it was originally executed.

Therefore, even though Mr. Shaffer is correct that an undated declaration may not be considered, *see Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (stating that unsworn affidavits had to be "excluded from consideration" because of the "explicit language" of § 1746), that defect has been remedied by the dated declaration accompanying Defendants' reply brief. Further, the language substantially complies with the requirements of § 1746(2) for a declaration executed within the United States.

Therefore, I find that Mr. Shaffer's challenges to the form of Ms. Sexton's declaration are insufficient to prevent its consideration.

**II.    Mr. Shaffer's allegation that Ms. Sexton's declaration contains inadmissible hearsay is without merit.**

Mr. Shaffer next asserts that Ms. Sexton's declaration contains "inadmissible hearsay statements from different representatives that fails to prove Shaffer's alleged credit card debt was assigned to these various assignees." (ECF #11 at PageID 91). I find this argument unpersuasive.

In her declaration, Ms. Sexton avers that she is an authorized representative of, *inter alia*, Defendant Resurgent Capital Services, L.P. (ECF #12-1 at PageID 101). She also states that she is a custodian of records for certain related entities, including Resurgent Receivables LLC. (*Id.*). She avers that the declaration is based on her "own personal knowledge of the matters set forth herein

5

or from personal knowledge gained" from a review of business records of the pertinent entities. (*Id.*). She further avers that she "personally reviewed those records pertaining to the account of Ashton Shaffer of 19706 State Route 637, Defiance, Ohio 43512-9369, account number ending in 9981 . . . ." (*Id.* at PageID 101-02).

Her declaration further states that Credit One Bank, NA assigned all of its right, title, and interest in Mr. Shaffer's account to MHC Receivables, LLC. (*Id.* at PageID 102). Attached to her declaration is a document entitled "Bill of Sale and Assignment of Receivables from Credit One Bank, NA to MHC Receivables, LLC," signed by Gary Hardwood, Vice President of Credit One Bank NA, with an effective date of July 31, 2020. (*Id.* at PageID 106).

Ms. Sexton further states that MHC Receivables, LLC assigned all of its right, title, and interest in Mr. Shaffer's account to Sherman Originator III LLC. (*Id.* at PageID 102). Accompanying Ms. Sexton's declaration is a document entitled "Bill of Sale and Assignment of Accounts from MHC Receivables, LLC to Sherman Originator III LLC," signed by Mark Rufsil, Authorized Representative of MHC Receivables, LLC, showing an effective date of August 13, 2020. (*Id.* at PageID 108).

Ms. Sexton continues that Sherman Originator III LLC then assigned to Resurgent Receivables LLC all of its right, title, and interest "to a pool of accounts, including the Shaffer Account." (*Id.* at PageID 102). Accompanying her declaration is a document entitled "Transfer and Assignment," signed by Jon Mazzell on behalf of Sherman Originator III LLC and Daniel Picciano on behalf of Resurgent Receivables. (*Id.* at PageID 110).

Next, Ms. Sexton avers that she "personally accessed and reviewed the electronic data containing the accounts" assigned by Sherman Originator III LLC to Resurgent Receivables LLC

"to locate Shaffer's Account information and to ensure that the Account was in fact among those assigned as part of the pool of assigned accounts." (*Id.* at PageID 103). She then attaches a "true and correct copy" of the Credit One Bank Card Agreement pertaining to Mr. Shaffer's account "taken from the original electronic file received from the sale of the Account." (*Id.*). Finally, Ms. Sexton concludes by stating that all of the documents attached to her declaration

> were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the events described, were kept in the ordinary course of the regularly conducted business activity of such persons, and it is the regular practice of those business activities to make and rely upon such records. These records have been incorporated into the business records of RRLLC and Resurgent and are routinely relied upon by RRLLC and Resurgent in conducting business. All of the documents attached hereto are business records of RRLLC that are maintained on RRLLC's behalf by Resurgent and are kept and maintained in the course of regularly conducted business activity.

(*Id.*).

Through her declaration, Ms. Sexton has established that the proffered documents constitute business records within the requirements of Fed. R. Evid. 803(6).[1] She also attested that she provided a true and correct copy of the initial Card Agreement between Mr. Shaffer and Credit One Bank, which is sufficient to make this competent evidence that can be considered. *See Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, No. 12-09510, 2013 WL 12139353, at *5 (C.D. Cal. Nov. 12, 2013) (noting that statement by claims representative "that the exhibits to his

---

[1] That one averment in Ms. Sexton's declaration was made "on information and belief" (*see* ECF #12-1 at PageID 102) does not invalidate the declaration. *See Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) ("to the best of [my] knowledge, information or belief" disclaimer sufficient under § 1746); *United States v. Roberts*, 308 F.3d 1147, 1154-55 (11th Cir. 2002) (declarant susceptible to prosecution for perjury despite "to the best of my knowledge and belief" disclaimer in declaration), *cert. denied*, 538 U.S. 1064 (2003); *Silva v. Gregoire*, No. C05–5731–RJB, 2007 WL 2034359, at *3 (W.D. Wash. July 3, 2007) ("to the best of my knowledge" disclaimer substantially complies with § 1746).

declaration are true and correct copies of documents in the claims file is therefore sufficient to authenticate them"), *aff'd*, 650 F. App'x 364 (9th Cir. 2016). Furthermore, as then-District Judge Thapar once aptly noted: "Debt collectors routinely rely upon documents that they have 'integrated into [their] records' even when they do 'not have personal knowledge' of or 'personally participate in [their] creation, or even know who actually recorded the information.'" *Caudill v. Cavalry SPV I, LLC*, No. 13-32-ART, 2014 WL 4230811, at *4 (E.D. Ky. Aug. 25, 2014).

In any event, the records Ms. Sexton supplied sufficiently establish a continuous chain of assignments from Credit One Bank to Resurgent Receivables/Resurgent Capital Services pursuant to written agreements, including assignment of the agreement to arbitrate that was part of the original Card Agreement between Mr. Shaffer and Credit One Bank. As such, Defendant Resurgent Receivables LLC may properly invoke the arbitration clause to require this matter be resolved in that forum. Defendants Halsted Financial Services, LLC and Brian S. Glass, Esq. may also do so, pursuant to language in the arbitration clause stating that "the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim subject to this arbitration provision . . . ." (ECF #12-1 at PageID 118).

Finally, I note that the original Card Agreement between Mr. Shaffer and Credit One Bank apparently contemplated just such a potential development. The agreement contained language that the arbitration clause "shall survive . . . termination of the Account or the relationship between you and us" and that Credit One "may assign any or all of our rights and obligations under this Agreement." (*Id.* at PageID 119).

I therefore find that Ms. Sexton's declaration is not based on inadmissible hearsay evidence.

8

**III.     Mr. Shaffer's assertion that Defendants have not supplied evidence of his debt is misplaced.**

Finally, Mr. Shaffer argues that "no actual documents indicating Shaffer's disputed debt w[ere] ever provided to the Court or the undersigned." (ECF #11 at PageID 91). I find this argument misplaced. To the extent Mr. Shaffer is suggesting he did not incur any debt in the first place, that is a matter to be resolved within the arbitration itself pursuant to the arbitration agreement. As noted above, the broad arbitration clause indicated in pertinent part that "Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; [and] any transactions involving your Account . . . ." (ECF #12-1 at PageID 117).

**IV.     An order compelling arbitration and dismissing this litigation without prejudice is appropriate and should issue.**

In the Sixth Circuit, a court confronted with a request to compel arbitration must resolve "a number of threshold determinations" before issuing such an order. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). These include: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *Id.* To defeat a motion to compel arbitration, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio*, 340 F.3d at 392.

Having independently considered each of these factors, and as discussed above, I find there is a broad, enforceable agreement to arbitrate between Mr. Shaffer and Credit One Bank that through valid written assignments now runs in favor of Defendants in this case. *See also Pyciak v. Credit One Bank, N.A.*, No. 17-11415, 2018 WL 4787660, at *2 (E.D. Mich. Oct. 4, 2018) ("In general, courts have found that Credit One's arbitration clause is valid and enforceable against the cardholder."). Further, each of the causes of action set forth in Mr. Shaffer's Complaint, including the federal statutory claims, have been held properly subject to an order compelling arbitration. *See, e.g.*, *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (holding that "nothing in RICO's text or legislative history otherwise demonstrates congressional intent to make an exception to the Arbitration Act for RICO claims"); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims."); *Hedeen v. Autos Direct Online, Inc.*, 19 N.E.3d 957, 969 ("The Ohio CSPA, as set forth in R.C. Chapter 1345, does not expressly preclude arbitration clauses in consumer sales contracts."). Finally, I find that Mr. Shaffer has not raised any genuine issue of material fact as to the validity of the agreement to arbitrate that would preclude an order compelling arbitration.

Accordingly, I recommend that the District Court issue an order compelling arbitration of each of Mr. Shaffer's claims against Defendants and otherwise dismissing this action without prejudice *See Robinson v. Credit One Bank, N.A.*, No. 1:20-CV-00492, 2020 WL 3270690, at *2 (N.D. Ohio June 17, 2020) ("[B]ecause all of Robinson's claims are subject to arbitration, dismissal is warranted.").

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court issue an order compelling arbitration of each of Mr. Shaffer's claims against Defendants and otherwise dismissing this action without prejudice.

Dated: December 30, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).